

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-12-00063-CR

ISRAEL RODRIGUEZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 40,818-A

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

# MEMORANDUM OPINION

Trial to the bench resulted in Israel Rodriguez' conviction of guilt for the offense of aggravated sexual assault of a child and a sentence of forty years' imprisonment. Rodriguez appeals his conviction on grounds that: (1) his Sixth Amendment right to be informed of the nature and cause of the accusation against him was violated because the State's indictment failed to include a culpable mental state, (2) the evidence was legally insufficient to support his conviction, and (3) the "statute setting the minimum punishment at twenty-five years' imprisonment violates the Eighth Amendment." We affirm the trial court's judgment because we find the evidence was legally sufficient to sustain Rodriguez' conviction and because Rodriguez failed to preserve his remaining points of error.

## I. Any Defect in the Indictment Was Waived

The State's indictment alleged that Rodriguez "did then and there cause the sexual organ of Jane Doe 08112009, a child who was then and there younger than six years o[f] age, to contact the sexual organ of the defendant." The indictment listed the offense as "aggravated sexual assault/child." Rodriguez points out that the intentional or knowing mental state, an element of the offense, was not included in the indictment. Rodriguez argues that the State's indictment, which clearly informed him that he was being accused of the aggravated sexual assault of a child, did not inform him of the nature and cause of the accusation against him, a Sixth Amendment guarantee. U.S. CONST. amend. VI.

"As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion. . . ."

TEX. R. APP. P. 33.1(a)(1). The record fails to demonstrate that Rodriguez' complaint on appeal was raised in the trial court. Even constitutional challenges can be waived by failure to object. *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004); *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995).

A defendant waives any defect of form or substance in an information if an objection is not made before the date trial commences. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (West 2005); *Teal v. State*, 230 S.W.3d 172, 177 (Tex. Crim. App. 2007); *State v. Oliver*, 808 S.W.2d 492, 494 (Tex. Crim. App. 1991) (failure to complain of defects prior to trial waived omission of culpable mental state allegation); *Williams v. State*, 356 S.W.3d 508, 519 (Tex. App.—Texarkana 2011, pet. ref'd). By failing to object before trial, Rodriguez waived any defect of form or substance.[1]

Rodriguez' first point of error is overruled.

## II. Legally Sufficient Evidence Supports the Conviction

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found the essential elements of aggravated sexual assault of a child beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing

---

[1]Moreover, "[t]he omission of an element of the offense . . . does not prevent the instrument from being a charging instrument." *Williams*, 356 S.W.3d at 519. "[A] written instrument is an indictment or information under the Constitution if it accuses someone of a crime with enough clarity and specificity to identify the penal statute under which the State intends to prosecute, even if the instrument is otherwise defective." *Id.* Here, the indictment specifically notified Rodriguez that the State intended to prosecute the offense of aggravated sexual assault of a child.

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. Rodriguez committed aggravated sexual assault of a child if he intentionally or knowingly caused the sexual organ of a child younger than fourteen years of age to contact his sexual organ. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (a)(2)(B) (West 2011).

At trial, the victim's grandmother, Maria Argueta, testified that she met Rodriguez in church, saw "him like a son," and allowed him to move in with her. One day, Argueta asked Rodriguez to watch the child so that she could take a shower. Argueta became concerned when she heard the child begin to whimper and cry. She exited the bathroom, went to Rodriguez' room, and "saw him on top of the child." She described the child's demeanor as being "afraid" and noticed "the Pamper of the child [was] below her little butt." Argueta testified, "[W]hen he saw me[,] he got off immediately" and "started crying" and asking for forgiveness. After

4

struggling with Rodriguez over the telephone, Argueta was able to call the police. Rodriguez fled.

Lieutenant Jonathan Gage responded to the call. Gage recalled that Argueta saw "an abrasion in [the child's] genital area that she did not recall seeing earlier that day when she changed [the child's] diaper." Gage was told that the child's diaper "had been pulled down" and that Rodriguez' pants "were down."[2] Gage advised the family to take the child to the hospital for a sexual assault nurse examiner (SANE) examination.

While Gage was speaking with Argueta, Officer Charles Dukes tracked and located Rodriguez. Dukes testified, "[W]hen I seen [Rodriguez] come out of the woods[,] he immediately walked out, got down on his hands and knees and laid down and put his hand over his head." The in-car video recording taken by Dukes demonstrated that Rodriguez understood and spoke English. According to Dukes, Rodriguez "seemed to be somewhat upset and just immediately said -- started saying things like, 'I'm sorry.' . . . He said, 'Yes, I know why you're here, and I was responsible for what took place at the house.'" On camera, Rodriguez said very clearly, "I was trying to have sex with her." Dukes also testified to Rodriguez' admission. Rodriguez was arrested.

According to Dukes, Rodriguez admitted during a post-arrest interview that (1) he pulled the child's diaper down to her mid-thigh, (2) he pulled down his pants and underwear, (3) he tried to put his penis inside of the child's sexual organ twice, and (4) his sexual organ contacted the child's sexual organ.

---

[2]At trial, Argueta testified that Rodriguez was found with his clothes on.

Nurse Nannetta Parras conducted the SANE examination. Parras testified that the child "was fine until I undid her diaper and was checking her genital area. She immediately started kicking me and putting her hands over her genital area and crying." Parras testified this behavior was unusual and raised her concern. Based on her experience, Parras stated that the child's demeanor was consistent with a child who had been sexually abused. In conducting the SANE examination, Parras documented "a small area of redness inside the labia majora on the labia minora . . . at 8 o'clock just before the hymen." Parras concluded that the redness could have been consistent with friction and rubbing.

Rodriguez took the stand and admitted to telling Dukes he attempted to have sex with the child twice. He testified that he pulled the child's diaper down, put her on the bed, pulled down his pants, and thought of having sex with the child. However, he claimed that he did not complete the act because he "felt bad." Instead, Rodriguez testified that he pulled his pants up and "hugged" the child by placing himself on top of her. In other words, Rodriguez attempted to explain Argueta's testimony by describing what she witnessed as a hug.

Our review of the video recorded interview reveals evidence to the contrary. In the interview, Rodriguez said, "I tried to have sex with her." He admitted that he removed the child's diaper and tried to put his penis inside of her twice, but stated that "it wouldn't work." Dukes received an affirmative response from Rodriguez when he asked if Rodriguez placed his penis against the child and "tried to make penetration."

6

Reviewing this evidence in the light most favorable to the verdict, we find the evidence legally sufficient for a rational trial judge to determine that the essential elements of aggravated sexual assault of a child were met, as alleged in the indictment, beyond a reasonable doubt.

We overrule Rodriguez' second point of error.

## III.  Challenge to Penal Code Section 22.021(f)(1) Was Not Preserved

The minimum term of imprisonment for aggravated sexual assault of a child is increased to twenty-five years if the victim is younger than six years of age at the time the offense is committed.  TEX. PENAL CODE ANN. § 22.021(f)(1) (West 2011).  Here, the victim was under two years of age.   For the first time on appeal, Rodriguez argues that the minimum twenty-five-year sentence constitutes cruel and unusual punishment.[3]

There are two types of challenges to the constitutionality of a statute:  the statute is unconstitutional as applied to the defendant or the statute is unconstitutional on its face.  *Fluellen v. State*, 104 S.W.3d 152, 167 (Tex. App.—Texarkana 2003, no pet.).  Rodriguez' brief appears to raise a challenge that the statute is unconstitutional on its face.[4]   As explained in *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009), "a defendant may not raise for the first time

---

[3]Rodriguez' generalized motion for new trial failed to raise this issue.

[4]To the extent that Rodriguez raises an as applied challenge, his complaint is not preserved. To preserve for appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired.  *Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd); *Noland v. State*, 264 S.W.3d 144, 152 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Williams v. State*, 191 S.W.3d 242, 262 (Tex. App.—Austin 2006, no pet.); *Nicholas v. State*, 56 S.W.3d 760, 768 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd); *see Curry*, 910 S.W.2d at 497.  This is because "[a] constitutionality challenge based on application to the defendant's case cannot be raised for the first time on appeal." *Fluellen*, 104 S.W.3d at 167 (citing *Briggs v. State*, 789 S.W.2d 918, 923 (Tex. Crim. App. 1990); *Smith v. State*, 10 S.W.3d 48, 49 (Tex. App.—Texarkana 1999, no pet.)); *see Garcia v. State*, 887 S.W.2d 846, 861 (Tex. Crim. App. 1994).

on appeal a facial challenge to the constitutionality of a statute." *See also Williams v. State*, 305 S.W.3d 886, 893 (Tex. App.—Texarkana 2010, no pet.). We conclude that Rodriguez failed to preserve this complaint for our review.

Rodriguez' last point of error is overruled.

## IV. Conclusion

We affirm the trial court's judgment.

Jack Carter
Justice

Date Submitted: February 20, 2013
Date Decided: March 6, 2013

Do Not Publish

8